Johnson, J.
delivered the opinion of the Court.
The grounds of the motion for a new trial have not been seriously urged, except so far as they are connected with, and depend upon that in arrest of judgment, and will, therefore, be considered in connexion with it. Those unconnected with that ground are at least untenable. That founded on the colour and genealogy of the witness, comes too late after verdict. Supposing the fact assumed to be true, and that he was legally incompetent, the objection ought to have been made on the trial below, and the jury were the exclusive judges of his credibility.
The motion in arrest of judgment presents the single inquiry, whether, after verdict up,on the merits, in relation to a subject matter within the jurisdiction of the Court, the judgment will be arrested on the suggestion of the defendant, that the Court has no jurisdiction over his person.
The statement of the proposition would seem to imply the answer.. When the motion in arrest is founded on matters appa *272 rent on the face of the proceedings themselves, and in relation to the subject matter of the suit or prosecution, the judgment must be arrested ; because any judgment which might be pronounced would be inoperative and void: and that is the true solution of the rule, that consent cannot give jurisdiction. But, when it involves matter dehors the record, it becomes a question of fact, which, however palpable, the Court is incompetent to determine on a motion in arrest of judgment. This principle requires no illustration. It is found in all the books of practice and no one has ever yet controverted it. 1 Ch. Pl. 431. 1 Sell. Prac. 498.
What is the case here 1 The defendant was put upon his trial for an offence against the State, and upon a plea to the merits was found guilty: and he now asks of this Court to inquire, Whether, by the laws of the land,he was not in his person privileged to be tried by a different tribunal. It is possible, that eases might occur, in which the foot alleged would be morally certain; but again it might remain in doubt and uncertainty: and the law has wisely referred these matters to the determination of a jury. It was never yet known that this Court, or any other possessing powers merely appellate, ever took upon itself to judge primarily as to matters of fact.
So much for the principle. Let us now examine the peculiarities of this case.
The act of 1740, provides that all crimes and offences committed by slaves, or by free negroes, indians, (free indians in amity with this government excepted,) mulattoes, or mestizoes, shall, if capital, be adjudged and finally determined by any two justices of the peace, and not less than three, nor more than five freeholders: if not capital, by any one justice of the peace, and any two freeholders, vide 9th and 14th sections of the act, P. L. 165. 6. 7. And the defendant claims now to be exempted ffotn the jurisdiction of the Court of Sessions, on the ground, that he falls within one of the classifications contained in this act, (that of a free mulatto,) and exhibits his person as evidence of the fact.
If Í were to judge from my own observation I should readily concede to the defendant the unenviable rank to which he aspires. But we know that nature has clothed her children in all the variety which can exist between European fairness and the *273 African black; and although colour would in general be a safe guide in determining the genealogy, yet in this country where ali the shades are so mixed up and blended together, it is not an infallible criterion, and by possibility I might err in forming a judgment; and the principle laid down prohibits, and I think wisely, that I should exercise my judgment in relation to it.
Í am aware of the difficulty, which has been complained of, in referring persons of colour to the proper tribunal, with respect to the jurisdiction of the Court of Sessions, and that established by the act; but I am unable to suggest any mode by which an unerring certainty can be attained. In general, I would say, that persons, falling within the description of the classes enumerated in the act, are amenable to a Court constituted according to its provisions, and there only ; as the words of the act are imperative, and I think exclusive. But what shall constitute the evidence of that state or condition, is a matter of great difficulty.
When the colour is distinctly marked, that of itself would furnish a presumption of the class to which the individual belonged. in a doubtful case, common reputation, which is always admissible in the deduction of pedigree, would serve as a guide. But these, as mere presumptions, must yield to positive proof; and if the party accused thinks proper to put that question in issue, as a preliminary to a trial on the merits, an example may be found in the common instances of misnomer, lunacy, &c.
The first section of the act of 1740, provides that the offspring of all slaves, whether negroes, mulattoes, mestizoes, or indians, shall follow the condition of the mother, and are declared to be slaves. P. L. 163. And it is, I know, the generally received opinion, that all questions involving the rank of persons of col-our to are be resolved by it; but it is most apparent, both in itself, and when taken with the context, that it was only intended to operate on the question of slavery or freedom: and when the words “ negro, mulatto, Syc." are used in the act for the purpose of designating a class, they are to be interpreted by their common acceptation, and not by the rule partus sequitur ventrem.
We will take the term mulatto as an example, which Dr. Johnson defines to be “one gotten between a white .and a black, as a mule between different species of animals.” This defini *274 tion makes no distinction in relation to the mother or the father. If it be the offspring of a black and a white, it is a mulatto, and in that sense the act must be construed.
Another embarrassing question which has been raised in the course of the argument is, whether the Courts of Sessions are bound to try one, who, upon inspection, evidently falls within the description contained in the act, unless he thinks proper to plead that matter. In a question of doubt it would certainly be the safest course to direct an issue to try the fact, but when it is so palpable as to admit of no controversy, the prosecuting officer might enter a nolle prosequi, or the Court in its discretion might insist upon his doing so, at any stage of the proceedings, and turn the party over to a Court of justices and freeholders, And this may be done even after conviction.
Nott, J.
In addition to the reasons of my brother Johnson,
I would observe, that we have no evidence, at this time, that the defendant is a mulatto, except that he has made it a ground of appeal. Suppose that on some future trial he should prove the reverse, by unquestionable testimony; must he escape punishment by such an artifice ? With regard to the witness, no evidence has been offered to the Court of his being a mulatto, as he is now alleged to be. No objection was made to his testimony in the Court below; and the presiding Judge did not think proper to reject his testimony on inspection. Nor has he ever been inspected by this Court.
Motion refused.